# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| EVERGREEN SQUARE OF CUDAHY, GRANT PARK SQUARE APARTMENTS COMPANY and WASHINGTON SQUARE APARTMENTS COMPANY, | Case No. 13-CV-743-JPS |
| Plaintiffs, | |
| v. | |
| WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY, | |
| Defendant and Third-Party Plaintiff, | ORDER |
| v. | |
| SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | |
| Third-Party Defendant. | |

Before the Court are Wisconsin Housing and Economic Development Authority's motion to dismiss the amended complaint (Docket #7) and the United States Department of Housing and Urban Development's motion to dismiss the third-party complaint (Docket #29). The Court will grant in part and deny in part both of these motions, for the reasons that follow.

1. BACKGROUND

Plaintiffs Evergreen Square of Cudahy, Grant Park Square Apartments Company, and Washington Square Apartments Company—each a Wisconsin business entity owning a multifamily rental housing project located in southeastern Wisconsin—bring this case against Wisconsin Housing and Economic Development Authority ("WHEDA"), "a public body corporate

and politic" of the State of Wisconsin, seeking remedies for alleged breaches of contracts. (*See* Docket #4).

In particular, each plaintiff asserts claims based upon a contract it entered into with WHEDA in order to receive federal rental subsidies passing through WHEDA from the United States Department of Housing and Urban Development ("HUD") as part of a program under Section 8 of the United States Housing Act of 1937 ("Section 8"), 42 U.S.C. § 1437f. (Docket #4). The plaintiffs allege three breach of contract claims (Counts I, II, and III) and also request a declaratory judgment (Count IV). *Id.* at 9-14.

WHEDA, in turn, filed a third-party complaint against HUD that alleges three causes of action. (Docket #19). In Count I, WHEDA alleges that if the Court finds that WHEDA breached its HAP contracts with the plaintiffs, HUD is responsible for those breaches and owes "damages [to WHEDA] for all costs and expenses that it has sustained or will sustain to remedy those breaches." *Id.* at 7. WHEDA's third-party complaint also includes a claim under the Administrative Procedure Act (Count II) and a request for a declaratory judgment (Count III). *Id.* at 7-9.

On August 29, 2013, WHEDA filed a motion to dismiss the plaintiffs' amended complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket #7). Thereafter, HUD took a similar tactic and filed a motion to dismiss WHEDA's third-party complaint, pursuant to both Rule 12(b)(1) and 12(b)(6). (Docket #29). Both motions to dismiss were fully briefed in mid-January, 2014.

On February 28, 2014, the Court granted both motions to dismiss, finding "no basis for federal subject matter jurisdiction over this case." (Docket #37 at 2). The plaintiffs appealed (Docket #39) and WHEDA cross-appealed (Docket #44). On January 12, 2015, the Seventh Circuit reversed

this Court's decision and remanded this case "with instructions to reinstate [the plaintiffs'] [a]mended [c]omplaint and WHEDA's [t]hird-[p]arty [c]omplaint." *Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 469 (7th Cir. 2015). The Seventh Circuit found that this case met the requirements of the "federal ingredient doctrine," *see One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 224 (1st Cir. 2013), *cert. denied*, —U.S.— , 134 S.Ct. 986 (2014), which defines a "slim category" of cases where "'arising under jurisdiction still lies,'" despite involving claims with "'origins in state rather than federal law.'" *See Evergreen Square*, 776 F.3d at 465-66 (quoting *Gunn v. Minton*, — U.S. —, 133 S.Ct. 1059, 1064 (2013)); *id.* at 468 ("We find that this case fits within the 'special and small category of cases' in which federal 'arising under' jurisdiction lies over a complaint raising state-law causes of action.").

After the Court received the Seventh Circuit's mandate (Docket #52), the Court scheduled a Fed. R. Civ. P. 16 scheduling conference (*see* Docket #54); that conference was held on April 8, 2015 (*see* Docket #56). At the Rule 16 conference, the parties and the Court discussed the best way to proceed in this case. *Id.* The parties requested—in the joint Rule 26(f) report and at the Rule 16 conference—that the Court first rule on the previously filed motions to dismiss. (*See* Docket #55) ("[T]he parties suggest that the Court decide the motions [to dismiss] on the current briefing and suspend all other proceedings in this case until the Court makes a decision on the motions."); (Docket #56). The Court indicated its willingness to do so. (*See* Docket #56).

True to its word, the Court now turns to WHEDA's and HUD's motions to dismiss. Before reaching the merits of those motions, however, the Court will first lay out the applicable legal standard and give a synopsis of Section 8.

2.      WHEDA'S AND HUD'S MOTIONS TO DISMISS

2.1      Legal Standard

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When reviewing a complaint, the Court construes it in the light most favorable to the plaintiff, accepts as true all well-pleaded facts alleged, and draws all reasonable inferences in the plaintiff's favor. *See Foxxxy Ladyz Adult World, Inc. v. Vill. of Dix, Ill.*, 779 F.3d 706, 711 (7th Cir. 2015).

To survive a motion to dismiss under Rule 12(b)(6), "the complaint must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)); *see Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.,* — F.3d —, 2015 WL 2151851, at *12  (7th Cir. May 8, 2015) (explaining that a plausible claim need only "'include enough details about the subject-matter of the case to present a story that holds together.'") (quoting *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014)). Thus, a plausible claim is one with "enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations." *Twombly*, 550 U.S. at 556.

To state a plausible claim, a plaintiff is not, however, required to plead specific or detailed facts, *see Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), nor does the plausibility standard also "impose a probability requirement on plaintiffs: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely.'" *Alam v. Miller Brewing Co.*, 709 F.3d

662, 666 (7th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556); *see Olson v. Champaign Cnty., Ill.*, — F.3d —, 2015 WL 1934388, at *5 (7th Cir. Apr. 30, 2015) ("In deciding or reviewing a Rule 12(b)(6) motion, [courts] do not ask did these things happen; instead, 'the proper question to ask is still '*could these things have happened.*'") (quoting *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014)). And, there is also no requirement that plaintiffs must state in their complaint "all possible legal theories." *Camasta*, 761 F.3d at 736 (citing *Dixon v. Page*, 291 F.3d 485, 486-87 (7th Cir. 2002)); *see Runnion*, 2015 WL 2151851, at *3 (finding a lower court's conclusion that a plaintiff must allege "facts supporting specific legal theories [to be] problematic, to say the least").

However, "[i]n reviewing the sufficiency of a complaint under the plausibility standard, [courts]…'need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam*, 709 F.3d at 665-66 (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)); *see Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (noting that "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8").

At bottom, determining whether a plaintiff has alleged a claim upon which relief may be granted "is dependant upon the context of the case and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Camasta*, 761 F.3d at 736 (quoting *Iqbal*, 556 U.S. at 679). The plaintiff's allegations must also be analyzed against the backdrop of Rule 8(a) itself, which "reflects a liberal notice pleading regime,…intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks*, 578 F.3d at 580 (quoting *Swierkiewicz v. Sorema*

*N.A.*, 534 U.S. 506, 514 (2002)); *cf. Runnion*, 2015 WL 2151851, at *5 (noting "considerable uncertainty…as to just how demanding pleading standards have become," since *Iqbal* and *Twombly*, and thus urging, "[i]n the face of that uncertainty," that courts approach pleadings liberally and grant leave to amend freely, "to ensure cases will be decided justly and on their merits").

2.2    Overview of Section 8 Contracts

Under Section 8, "the United States, acting through HUD, subsidizes the rents of low-income tenants of privately-owned dwellings." *Greenleaf Ltd. P'ship v. Ill. Hous. Dev. Auth.*, No. 08-CV-2480, 2013 WL 4782017, at *1 (N.D. Ill. Sept. 6, 2013) (hereinafter *Greenleaf III*) (citing 42 U.S.C. § 1437f); *see One & Ken Valley Hous. Grp.*, 716 F.3d at 219-20.  To achieve Section 8's purpose, and as relevant here, HUD enters into an Annual Contribution Contract ("ACC") with a State Housing Agency; that agency, in turn, enters into a Housing Assistance Payments ("HAP") contract with the landlord of a particular privately-owned dwelling. *See Greenleaf III*, 2013 WL 4782017, at *1. "A HAP [c]ontract is 'the Contract entered into by the owner and the State Agency upon satisfactory completion of a new construction or substantial rehabilitation project which sets forth the rights and duties of the parties with respect to the project and the payments under the Contract.'" (Docket #4 at 4) (quoting 24 C.F.R. § 883.302 (2013)).

A HAP contract sets forth the rent for each unit covered by the HAP contract. *Id.* HUD pays to the State Agency, here WHEDA, the difference between what the tenant pays and the Contract Rent—this is known as a "monthly assistance payment"; WHEDA, in turn, pays that amount to the tenant's landlord. *Id.*; *see also One & Ken Valley Hous. Grp.*, 716 F.3d at 220 (noting that Section 8 "authorize[s] the HUD secretary 'to enter into annual contributions contracts with public housing agencies pursuant to which such

agencies may enter into contracts to make housing assistance payments to owners of existing dwelling units'") (quoting Housing and Community Development Act of 1974, Pub. L. No. 93-383, § 201(a), 88 Stat. 633, 662 (codified as amended at 42 U.S.C. § 1427f(b)(1))).

Originally, Section 8 provided that contract rents "paid to landlords at program sites would be adjusted on at least an annual basis 'to reflect changes in the fair market rentals established in the housing area for similar types and sizes of dwelling units or, if the Secretary determines, on the basis of a reasonable formula.'" *One & Ken Valley Hous. Grp.*, 716 F.3d at 220 (quoting 88 Stat. 663 (codified at 42 U.S.C. § 1437f(c)(2)(A))); *see Haddon Hous. Assoc., Ltd. P'ship v. United States*, 711 F.3d 1330, 1333 (Fed. Cir. 2013) (hereinafter *Haddon III*); (Docket #8 at 13) ("Each HAP Contract provides for annual adjustments to Contract Rents under specified conditions."). To determine the amount of those annual increases, "HUD publishes 'automatic annual adjustment factors [("AAAFs")]' for specific Census regions and metropolitan areas that reflect changes in the Consumer Price Index for rent and utilities over the previous year.'" *One & Ken Valley Hous. Grp.*, 716 F.3d at 220-21 (citing 24 C.F.R. §§ 888.201–.204 (2012) and 77 Fed. Reg. 22,340, 22,340–43 (Apr. 13, 2012)); *see Haddon III*, 711 F.3d at 1333. AAAFs are published annually in the Federal Register. *See* 24 C.F.R. § 888.202; *Haddon III*, 711 F.3d at 1333. Upward increases in Section 8 rents "should be calculated by multiplying the applicable annual adjustment factor…by the rent stipulated by contract for each unit." *One & Ken Valley Hous. Grp.*, 716 F.3d at 221 (citing 24 C.F.R. § 888.203).

HUD drafted standard form contracts for state and local agencies, including WHEDA, to use when entering into agreements with Section 8 landlords. *Id.* One provision of those contracts, referred to as the "overall

limitation clause"—a contractual provision that exists in the instant contracts at issue (*see* Docket #4, Exs. 1-3)—provides, in essence, that annual adjustments of contract rents shall not result in material differences between the rents charged for Section 8 housing and comparable "unassisted" housing. *One & Ken Valley Hous. Grp.*, 716 F.3d at 221; (*see* Docket #4, Exs. 1-3).

During the early years of Section 8's existence, "public housing agencies applied the automatic annual adjustment factors published by HUD and granted regular rent increases to Section 8 landlords," which HUD funded through its annual contributions to those public housing agencies. *One & Ken Valley Hous. Grp.*, 716 F.3d at 221. HUD and Congress slowly began making changes to Section 8 in the 1980s, changes which were litigated across the country. *See id.*

In 1994, Congress again amended Section 8, this time "to specify certain procedures for the implementation of annual adjustments of Contract Rents." (Docket #8 at 13). Whereas before the 1994 amendments, the onus was on HUD to prove that a rent increase was unwarranted because the annual adjustment would take unit rents above fair-market prices, the 1994 amendments—*see* Department of Veterans Affairs, Housing and Urban Development and Independent Agencies Appropriations Act, 1995, Pub. L. 103-327, 108 Stat. 2298, 2315 (1994) (codified at 42 U.S.C. § 1437f(c)(2)(A)) (hereinafter "the 1994 amendments")—"seemed to shift the onus onto landlords to demonstrate that adjusted rents would not exceed the market for comparable units." *One & Ken Valley Hous. Grp.*, 716 F.3d at 222; *see Greenleaf Ltd. P'ship v. Ill. Hous. Dev. Auth.*, No. 08-CV-2480, 2009 WL 6166225, at *4-5 (N.D. Ill. Dec. 23, 2009) (hereinafter *Greenleaf I*); *Haddon III*, 711 F.3d at 1333; (Docket #30 at 5) (noting that "the 1994 Amendments provide that,

when Contract Rents exceed the Fair Market Rents determined by HUD, Contract Rents will be adjusted only to the extent that the owner demonstrates that the adjusted rent will not exceed the rent for comparable, unsubsidized rental housing units") (citing 42 U.S.C. § 1437f(c)(2)(A)).

In 1995 HUD issued Notice H 95-12 ("Notice 95-12"), in which HUD confirmed that the onus was on landlords to justify an increase in contract rents. *See* HUD Directive 95-12, Annual Adjustment Factor Rent Increase Requirements Pursuant to the Housing Appropriations Act of 1995 (Mar. 7, 1995). Namely, Notice 95-12 clarified that "in order for the owner of a Section 8 project to receive the annual rent increase to which the owner would otherwise be entitled under its HAP Contract, the owner is required to submit an 'Estimate of Market Rent by Comparison'…at least sixty days before the anniversary date of the owner's HAP Contract when the Contract Rents exceed the applicable Fair Market Rents published by HUD." (Docket #4 at 6).

In addition to the change noted above, Congress further revised Section 8 in the 1994 amendments "by requiring that for the units in a Section 8 project that are occupied by the same family as the family who occupied the unit at the time of the previous annual rent increase, .01 be subtracted from the AAAF that would otherwise be used to increase a unit's Contract Rent." (Docket #4 at 5) (citing Pub. L. 103-327, 108 Stat. 2315 (1994)); *see Haddon III*, 711 F.3d at 1334. Prior to 1995, HUD published one annual AAAF table in the Federal Register; as a result of the 1994 amendments, HUD published two: Table 1, the full AAAFs, and Table 2, which reduced the Table 1 AAAFs by .01, "except that no AAAF is reduced below 1.000." (Docket #4 at 8).

### 2.3 WHEDA's Motion to Dismiss

WHEDA's motion to dismiss requests that: (1) all of the breach of contract claims (Counts I, II, and III) and the declaratory judgment claim (Count IV) be dismissed for failure to state a claim; (2) the breach of contract claims (Counts I-III) be dismissed "to the extent that they seek damages or other relief for the period prior to the applicable statute of limitations"; (3) if Count I is not dismissed for failure to state a claim, that the plaintiffs be required to provide a more definite statement, pursuant to Fed. R. Civ. P. 12(e); and, (4) if Count III is not dismissed for failure to state a claim, the Court should proceed to consider matters outside the pleadings on Count III—*i.e.* convert WHEDA's motion regarding this claim to one for summary judgment—and grant WHEDA summary judgment based on the undisputed facts. (Docket #7 at 1-2).[1]

At the outset, the Court can dispense with WHEDA's argument that the breach of contract claims should all be dismissed, to the extent that those claims are barred by the statute of limitations. (*See* Docket #8 at 8). Dispense with, that is, because the plaintiffs state in their brief in opposition that they "are not seeking damages for more than the six-year limitations period specified by Wis. Stat. § 893.43." (Docket #24 at 1 n.2). The Court is obliged, then, to grant WHEDA's motion to dismiss Counts I, II, and III, to the extent that those claims are barred by the applicable statute of limitations.

Turning, then, to the heart of WHEDA's motion to dismiss, the Court will proceed to discuss the parties' arguments for and against dismissal of

---

[1]WHEDA also requests, in the alternative, dismissal of the amended complaint "for failure to join a required party pursuant to Fed. R. Civ. P. 12(b)(7) and 19(a)(1)(A)(ii), namely HUD." (Docket #8 at 9). Because HUD is properly a party, this request is moot.

each of the plaintiffs' claims. The Court will do so, for the sake of clarity, by analyzing each count alleged against WHEDA in numerical order.

### 2.2.1    Count I Should Not Be Dismissed

Count I alleges a breach of contract claim concerning Washington Square's HAP contract with WHEDA. (Docket #4 at 9). Specifically, in the amended complaint and their brief in opposition, the plaintiffs aver that they were entitled to "automatic" annual increases in rent for all units at Washington Square, pursuant to the HAP contract. (Docket #24 at 15); (Docket #4 at 9-10) ("Under the Washington Square Contract, Plaintiff Washington was entitled to a rent increase for all of the units at the Washington Square Apartments project on each anniversary date of the Washington Square Contract."). The HAP contract itself states, in relevant part: "*Upon request from the Owner* to [WHEDA] Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24 CFR Part 888 and this Contract." (Docket #4, Ex. 3 at 20) (emphasis added).

The plaintiffs' amended complaint goes on to state that "[c]ontrary to the terms of the Washington Square Contract, WHEDA did not approve an increase in the Contract Rents for the one-bedroom elderly units at the Washington Square Apartments project since before 2006." (Docket #4 at 9); *see id.* at 10 ("Although WHEDA approved an increase in the Contract rents for the other units at the Washington Square Apartments project after 2006, WHEDA did not approve an increase on every anniversary date of the Washington Square Contract a[s] required by the Contract."). Thus, the plaintiffs allege, each failure by WHEDA to increase the Contract rents for all of the Washington Square units—after 2006—was a breach of the HAP contract, and those breaches allegedly caused the plaintiffs monetary damages. *Id.* at 10.

In its motion to dismiss, WHEDA makes various arguments as to why the plaintiffs have failed to state a claim upon which relief may be granted. One of those arguments—which WHEDA admits is speculative— is that the plaintiffs are attempting to challenge the "overall limitation" clause in the Washington Square HAP contract. (*See* Docket #8 at 24-27). The Court need not expend much energy on this argument, however, given that the plaintiffs' response brief explicitly states that Washington Square is *not* asserting any claim related to the overall limitation clause of the HAP contract. (*See* Docket #24 at 18).

The gravamen of WHEDA's motion to dismiss is that the breach of contract claim at issue fails to identify sufficient facts to determine "what increases were not approved, the supposed basis for any such non-approval, or even a general allegation that all contractual and regulatory prerequisites for any such approval were met." (Docket #8 at 23-24). Thus, according to WHEDA, "[h]ow, or what provision of, the [Washington Square] HAP contract was breached is left fully to the imagination of the reader." *Id.* at 27. WHEDA goes on to clarify this argument in its reply brief by stating that because the Washington Square HAP contract's language requires the owner to request a rent increase, the plaintiffs' amended complaint fails to state a claim by not alleging that this condition precedent has been satisfied. (Docket #27 at 13-15); *see also* Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed.").

The plaintiffs argue, conversely, that "there are no contractual or regulatory prerequisites to the automatic rent increases." (Docket #24 at 15). And thus, Washington Square was not obliged to allege compliance with a prerequisite that was not applicable to it. *Id.*

The Court finds that the breach of contract claim alleged by Washington Square (Count I) states a claim for relief. To begin, the Court notes that, to the extent that WHEDA is arguing that Washington Square was required to allege specific facts concerning the purported condition precedent, it misstates the requirements under Rule 9(c). That rule requires only a general, even conclusory allegation of compliance. *See* Fed. R. Civ. P. 9(c) (stating that parties are required to "*allege generally* that all conditions precedent have occurred or been performed"); *Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1224 (11th Cir. 2010). Nor does the "heightened" pleading standard articulated by the Supreme Court in *Iqbal* and *Twombly* apply to Rule 9(c). *See Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 112 (3d Cir. 2014) ("*Iqbal* and *Twombly* interpreted Federal Rule of Civil Procedure 8(a), which governs the standard for pleading a claim for relief," and because pleading conditions precedent is "governed by Rule 9(c)…Neither *Iqbal* nor *Twombly* purport to alter Rule 9.")

More fundamentally, however, the parties dispute whether that language *is a condition precedent* (or, for that matter, whether there are *any* prerequisites to annual rent increases). To be sure, the Court has before it the contract in dispute, and it certainly appears that a request is required. (*See* Docket #4, Ex.3) ("Upon request from the owner…"); *see also Haddon Hous. Assoc. v. United States*, 92 Fed. Cl. 8, 17-20 (Fed. Cl. 2010) (hereinafter *Haddon I*) ("On its face, the HAP Contract appears to require plaintiffs to request rent increases."). In addition, other courts, analyzing identical language in other HAP contracts, have held that those HAP contracts do impose a condition precedent—*i.e.* a request from the landlord—that the landlord must satisfy before any annual rent increases are owing. *See, e.g., Greenleaf Ltd. P'ship v. Ill.*

*Hous. Dev. Auth.*, No. 08-CV-2480, 2010 WL 3894126, at \*5-6 (N.D. Ill. Sept. 30, 2010) (hereinafter *Greenleaf II*) (noting in an identical scenario, that the HAP contract at issue required the landlord to "request an adjustment to its Contract Rents before [the State Agency was] obligated to adjust the Contract Rents on the anniversary date," and thus, a request was "a condition precedent to…performance under the Contract"). Were that the end of the story, the Court would be obliged to grant WHEDA's motion to dismiss Count I.

But, of course, that is not the end of the story. First, the plaintiffs state in the amended complaint that WHEDA actually "approved an increase in the Contract rents for the other units at the Washington Square Apartments project after 2006." (Docket #4 at 10). If an increase was "approved" for some units, this in turn raises at least two reasonable inferences: (1) that WHEDA was not in fact treating the contractual language as a condition precedent; or (2) that a request was indeed made by Washington Square for an annual increase, which WHEDA was required to, and did "approve" (albeit in part). On the latter point, the Court also points out that one does not "approve" things, typically, without being asked to do so.

In addition, WHEDA's statement in its third-party complaint that the Washington Square HAP contract's "rent adjustment provisions vary slightly in form, but not in substance, from those of Evergreen and Grant Park," bolsters these inferences. Namely, the Evergreen and Grant Park HAP contracts *do not require* landlords to request rent increases, (*see* Docket #4, Exs. 1, 2), and thus WHEDA's statement implies that it viewed—and perhaps administered—Washington Square's HAP contract similarly, notwithstanding the "upon request from the owner" language.

Considering then, that on a Rule 12(b)(6) motion to dismiss the Court must draw all reasonable inferences in the non-moving party's favor, and the Court may also infer that a condition precedent has been satisfied, *see Kiernan v. Zurich Cos.*, 150 F.3d 1120, 1124 (9th Cir. 1998) (finding that while a condition precedent was not specifically alleged, satisfaction of that condition could be inferred from the surrounding facts), the Court finds that these inferences militate against dismissal of Count I.

And, while the Court acknowledges that there are certainly cases finding that the language at issue here is a condition precedent, *see Greenleaf II, 2*010 WL 3894126, at *5-6; *Haddon Hous. Assoc. v. United States*, 99 Fed. Cl. 311, 326 (Fed. Cl. 2011) (hereinafter *Haddon II*), *aff'd in part, rev'd in part*, 711 F.3d 1330 (Fed. Cir. 2013), none of those cases were resolved on a motion to dismiss. Indeed, both the *Greenleaf II* and *Haddon II* courts held that the language at issue was a condition precedent *post-discovery*. *See Greenleaf II*, 2010 WL 3894126, at *6 (granting summary judgment after determining there was a condition precedent); *Haddon II*, 99 Fed. Cl. at 313 (ruling on the issue in a post-trial decision). And, tellingly, the *Haddon* court, in its prior order denying summary judgment on that issue, identified the myriad reasons why this provision may indeed *not be* a condition precedent. *See Haddon I*, 92 Fed. Cl. at 17-20.[2]

While it is certainly a close call, the Court finds that the plaintiffs have adequately pled a breach of contract claim in Count I and further factual

---

[2]In addition, the court in *Cathedral Square Partners Ltd. v. S. D. Hous. Dev. Auth.*, 875 F. Supp. 2d 952, 955 (D.S.D. 2012) (hereinafter *Cathedral Square III*), in light of *Haddon II*, 99 Fed. Cl. at 316-19, walked back its holding—again, post-discovery—that strict compliance with the language at issue was required, despite finding the language imposed a condition precedent.

development is necessary to resolve that claim. However much WHEDA would prefer that this contract claim be lifted away from the confusing legislation and administration of the Section 8 program, and the confusing court decisions that have resulted therefrom, *see Park Properties Assocs., L.P. v. United States*, –- Fed. Cl. –-, 2015 WL 1826352, at *3 (Fed. Cl. Apr. 22, 2015) (noting that "the decisional law on [Section 8 contracts and the 1994 amendments] remains somewhat unsettled, even until now," and collecting cases), the Court cannot adjudicate this claim (or this case) with blinders on. *See Evergreen Square*, 776 F.3d at 467 ("While state law may create the breach-of-contract causes of action, the only disputed issues involve the proper interpretation of Section 8 and HUD's implementing guidelines."). Accordingly, WHEDA's motion to dismiss Count I will be denied.

### 2.3.2 Count II Should Not Be Dismissed

Count II also alleges a breach of contract claim, in this instance pertaining to WHEDA's use of the Table 2 AAAFs to calculate the rent increases due to the plaintiffs; as noted above, Table 2 reduces the AAAF for non-turnover units by .01, and the genesis of the Table 2 AAAFs was Notice 95-12 (HUD's implementation of the 1994 amendments). (Docket #4 at 10-11). According to the plaintiffs, WHEDA's use of the Table 2 AAAFs, instead of the Table 1 AAAFs, reduced the housing assistance payments they were entitled to under the HAP contracts at issue, and thus breached those contracts. *Id.* And, those breaches resulted in monetary damages to the plaintiffs. *Id.*

WHEDA argues that the HAP contracts' explicit terms require that WHEDA adjust the contract rents annually by "applying the *applicable* [AAAF] most recently published by the government," (*see* Docket #4, Ex.1, 2) (emphasis added), and so too does 24 C.F.R. 888, the regulation referenced

by the HAP contracts, *see id.* Thus, WHEDA continues, it had no choice but to use the Table 2 AAAFs for the plaintiffs' non-turnover units (Docket #8 at 15-18), because it was handcuffed by HUD's implementation of the 1994 amendments. So, in WHEDA's view, "whatever complaint Plaintiffs may have about the non-turnover factors, they have no basis to sue WHEDA for simply applying the specific, applicable factor called for by both the parties' contracts and governing law." (Docket #8 at 17). WHEDA reiterates this point, more forcefully, in its reply brief: "The terms of the HAP Contracts were imposed upon WHEDA, and WHEDA has no authority to alter them. WHEDA had no choice but to comply with the change in law imposed by Congress and HUD." (Docket #27 at 10); (*see also* Docket #31) (arguing, in WHEDA's opposition to HUD's motion to dismiss, that "WHEDA is 'caught in the middle' between the Plaintiffs and HUD, [because all of WHEDA's alleged contractual breaches] result from WHEDA following Congressional and HUD directives").

The plaintiffs' main point in opposition to dismissal of Count II seems to be that, while the HAP contracts and applicable regulations do require that a rent increase be calculated with the "applicable" AAAF, "[t]his begs the question of what is the 'applicable' [AAAF] for non-turnover units." (Docket #24 at 12). And, as the plaintiffs point out, and WHEDA's arguments above illustrate, the parties clearly disagree on the applicable AAAF.

Both parties' briefs also delve into the muddled case law on this issue. Nearly all of the cases cited by the parties, unsurprisingly, are the cases the Court discussed above regarding Count I. The case law, again, leaves much to be desired.

Two district courts have held that state housing agencies, administering HAP contracts, did not breach those contracts by using Table

2 AAAFs for non-turnover units. *See Greenleaf II*, 2010 WL 3894126, at *6-7; *Cathedral Square Partners Ltd. P'ship v. S. D. Hous. Dev. Auth.*, 2011 WL 43019, at *14-17 (D.S.D. Jan. 5, 2011) (hereinafter *Cathedral Square II*) (basing its decision, in part, on *Greenleaf II*).

Subsequent to the aforementioned district court decisions, however, the Federal Circuit held, in the context of HAP contracts between landlords and HUD itself, that HUD's use of the Table 2 AAAFs did breach its HAP contracts. *See Haddon III*, 711 F.3d at 1336 ("We…agree that the government's deduction of one percent (1%) from the annual adjustment factor to be applied to contract rents for non-turnover units breached the HAP Contract because the one-percent (1%) figure was arbitrary."). And, as the plaintiffs point out, *Haddon III* thus calls into question *Greenleaf II* and *Cathedral Square II*, given that both were pre-*Haddon III,* and, more importantly, both explicitly relied on earlier Federal Circuit precedent contrary to *Haddon III. See Cathedral Square II*, 2011 WL 43019, at *17 ("This Court finds the reasoning set forth in *Cuyahoga II*,[3] *Park Properties*,[4] and *Greenleaf* [*II*] persuasive, adopts the same, and concludes that the one percent reduction in automatic annual adjustment factors for non-turnover units is not a breach [of the HAP contracts]."); *Greenleaf II*, 2010 WL 3894126, at *6 ("The Court finds that the .01 reduction in [Annual] Adjustment Factors for Non-Turnover Units is not a breach of the Plaintiffs' HAP Contracts and adopts the reasoning in *Cuyahoga II* and *Park Properties*."); *Cf. Park Properties*, 2015 WL 1826352, at *3 ("[T]he decisional law…plainly was unclear prior to the Federal Circuit's

---

[3] *See Cuyahoga Metro. Hous. Auth. v. United States*, 65 Fed. Cl. 534 (Fed. Cl. 2005).

[4] *See Park Properties Assoc., L.P. v. United States*, 74 Fed. Cl. 264 (Fed. Cl. 2006)

decision in [*Haddon III*]. Indeed, *Haddon* [*III*] aside, the decisional law on aspects of this subject remains somewhat unsettled, even until now.") (citing, *inter alia*, *Cathedral Square II*, *Greenleaf II*, and *Cuyahoga Metro. Hous. Auth. v. United States*, 57 Fed. Cl. 751, 783 (Fed. Cl. 2003) (*Cuyahoga I*)).

It should be noted, however, that the court in *Greenleaf II,* in addition to resolving the Table 2 AAAF claim before it by relying on now-questionable pre-*Haddon III* decisions, also grounded its decision in straight contract law. *See Greenleaf II*, 2010 WL 3894126, at *7 (stating that a state agency's compliance with HUD's implementation of the 1994 amendments "provide[s] no basis for [a] breach of contract" claim, and instead is "a challenge to a legislative classification drawn by Congress"). WHEDA's brief argues, in light of this, that *Greenleaf II* remains viable, notwithstanding *Haddon III*. (Docket #27 at 12) (pointing out that "[a]lthough [the courts in *Greenleaf II* and *Cathedral Square II*] may have looked to the Court of Federal Claims cases for guidance, their decisions are based on independent analysis and reasoning").

Finally, WHEDA also states (in a footnote) that it "believes [the] Court can dispose of Count II as a matter of straight contract law." (Docket #8 at 18 n.20). The plaintiffs argue, conversely, that WHEDA's request (based on its belief) that this claim be resolved as a matter of contract law "should be disregarded" given that the Court only has before it a Rule 12(b)(6) motion to dismiss for failure to state a claim. (Docket #24 at 15). Stated another way, the plaintiffs argue that a ruling on the merits is improper at this early stage and without further factual development and briefing. *See id.*

The Court is obliged to deny WHEDA's motion to dismiss Count II, for many of the same reasons articulated in its discussion of Count I. Similar to Count I, WHEDA has failed to point to a single decision where a claim

similar to Count II was dismissed prior to summary judgment. In the Court's view, this makes sense, given the contours of the regulatory and legal environment from which this claim arises. Plus, there is sparse and contradictory case law on this issue, just as there was in Count I. Both of these reasons counsel against dismissal of this claim.

At bottom, and most importantly, the motion before the Court–– a Rule 12(b)(6) motion, the function of which is to test whether the complaint states a claim—does not require resolution of this claim on the merits; this is especially so when the Court finds—as it does here—that further factual development is necessary. The Court concludes that Count II of the plaintiffs' amended complaint states a claim, given that: it alleges a contract existed, it alleges a breach of that contract, and it alleges damages; and, there is case law, albeit sparse, that permits the Court to find the claim legally and factually plausible. As the parties well know, that is all that is required to survive a Rule 12(b)(6) motion. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) ("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). As such, WHEDA's motion to dismiss Count II of the amended complaint will be denied.

### 2.3.3 The Plaintiff Has Agreed to Dismissal, With Prejudice, of Count III

Count III of the plaintiffs' amended complaint alleges a third breach of contract claim, in this instance arising from the requirement, pursuant to the 1994 amendments (and HUD's implementation of those amendments), that the plaintiffs submit rent comparability studies to justify a request for an annual contract rent increase. (Docket #4 at 11-12).

The Court need not trouble itself with this claim, though, because the plaintiffs, in their brief in opposition, state that they "have determined that they *did not* submit any rent comparability studies…[and thus] do not oppose the granting of summary judgment in favor of WHEDA on Count III." (Docket #24 at 6) (emphasis added).

In light of the foregoing, the Court will grant WHEDA's motion to dismiss Count III.

### 2.3.4   Count IV Should Not Be Dismissed

Count IV of the plaintiffs' amended complaint requests a declaratory judgment—related to the breach of contract claims noted above—declaring, *inter alia*, that: (1) "future rent increases be calculated with Table 1 [AAAFs] …even for non-turnover units"; and (2) "that rent comparability studies [are] not required for future rent increases." (Docket #8 at 22); (*see* Docket #4 at 12-14). The plaintiffs' request for declaratory relief is limited to the Evergreen HAP contract because it is the only contract that has not expired. (*See* Docket #4 at 7).

WHEDA's argument for dismissal of Count IV was predicated on the Court dismissing Counts II and III of the amended complaint. (S*ee* Docket #8 at 22) ("Here, as demonstrated, Evergreen does not state a claim for relief as to the automatic adjustment or rent comparability studies. [Thus, i]ts claim for declaratory relief must also be dismissed."); (Docket #27 at 15). Indeed, declaratory relief would have been unavailable if the Court had found the underlying claims for substantive relief failed to state a claim. *See Ferguson-Kubly Indus. Servs. v. Circle Entl., Inc.*, 409 F. Supp. 2d 1072, 1081 (E.D. Wis. 2006); *Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1134 (7th Cir. 2012) ("As long as a live controversy exists between the parties, the district court has discretion to declare the rights of the parties."). But, because the

Court *has not* dismissed Counts II (or Count I), WHEDA's argument for dismissal of Count IV evaporates.

Given that the Court has broad discretion to entertain requests for declaratory relief, *see, e.g., Northfield*, 701 F.3d at 1133 ("The Declaratory Judgment Act by its own terms grants district courts discretion in determining whether to entertain such an action.") (citing 28 U.S.C. § 2201), and lacking a reason not to exercise that discretion, the Court will permit Count IV to proceed. WHEDA's motion to dismiss Count IV will, therefore, be denied.

### 2.4 HUD's Motion to Dismiss WHEDA's Third-Party Complaint

As noted above, after the plaintiffs filed the instant suit, WHEDA filed a third-party complaint against HUD alleging three causes of action: (1) breach of contract; (2) a challenge to HUD's implementation of the 1994 amendments, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06; and (3) a request for declaratory judgment that clarifies "its rights and responsibilities in applying the 1994 [amendments] and Notice 95-12 with respect to adjustments of Contract Rents for the HAP Contracts to which it is a party, and its right to have such rent adjustments funded by HUD pursuant to the related ACCs." (Docket #19 at 7-9).

HUD moves for partial dismissal of WHEDA's third-party complaint; specifically, dismissal of the APA claim—Count II—and the declaratory judgment claim—Count III. (*See* Docket #30 at 6-8). HUD's overarching argument for dismissal is that adjudication of the breach of contract claim—Count I—precludes jurisdiction under the APA, and renders the declaratory judgment claim unnecessary (and, in some sense, duplicative). HUD also moves for dismissal of the breach of contract claim, should the Court dismiss the plaintiffs' entire amended complaint. *Id.* at 8; (Docket #33 at 10 n.4)

(noting that "HUD moves to dismiss the Count I Breach of Contract Claim only if the [a]mended [c]omplaint is dismissed…"). Since the Court declined to dismiss the plaintiffs' amended complaint, Count I of the third-party complaint will not be dismissed.

Before turning to HUD's arguments for dismissal of Counts II and III of the third-party complaint, the Court must address WHEDA's argument that HUD's motion to dismiss is premature and raises arguments that are not ripe for adjudication. (Docket #31 at 3). In support of this argument, WHEDA cites *Gloucester Twp. Hous. Auth. v. Franklin Square* Assocs., No. 12-CV-953, 2013 WL 3990820, at *7 (D.N.J. Aug. 2, 2013), where a district court found certain claims against HUD were contingent on the court finding a breach of the HAP contracts at issue, and thus dismissal of certain claims was premature. HUD argues, and the Court agrees, that *Gloucester* is inapposite. Inapposite, that is, because *Gloucester*, while a similar Section 8 case, did not involve a motion to dismiss APA and declaratory judgment claims; and, the procedural posture and nature of the action were vastly different than here. Even if *Gloucester* did involve a request to dismiss similar claims—which, to be clear, it did not—the Court would still find adjudication of HUD's motion to dismiss warranted. True, WHEDA's claims are contingent on the viability of the plaintiffs' claims and the legal viability of the causes of action WHEDA asserts. But, in some respects, that is the entire point of adjudicating the motion to dismiss at this juncture. Thus, the Court declines to defer its ruling on HUD's motion.

Accordingly, the Court now turns to HUD's arguments for dismissal of Counts II and III.

### 2.4.1 Count II Should Be Dismissed

Count II of WHEDA's third-party complaint alleges that if HUD caused WHEDA to breach the plaintiffs' HAP contracts, that breach was due to HUD's issuance of Notice 95-12, an action that WHEDA alleges was "arbitrary, capricious, an abuse of discretion, contrary to law, and contrary to constitutional right, in violation of 5 U.S.C. § 706." (Docket #19 at 8). Importantly, however, WHEDA has alleged this claim "in the alternative." *Id.* at 7. Specifically, WHEDA states that the claim is premised on "the Court determin[ing] that there is a lack of jurisdiction under 28 U.S.C. § 1331 or that the claims do not arise under the parties' contracts." *Id.*; (*see* Docket #30 at 14) ("Even [WHEDA] admits that its claims are contractual and that the APA and breach of contract claims cannot coexist.").

HUD's motion to dismiss Count II argues WHEDA's APA claim cannot proceed because: (1) WHEDA's breach of contract claim provides an adequate remedy, *see* 5 U.S.C. § 704 (permitting an APA claim when "there is no other adequate remedy in a court"); (2) the APA does not permit relief "if any other statute that grants consent to suit expressly or impliedly forbids [the requested relief]," *see* 5 U.S.C. § 702, and according to HUD, the Tucker Act, 28 U.S.C. § 1491, impliedly forbids the relief WHEDA seeks; and, (3) the APA does not permit relief where the claimant is seeking money damages, *see id.*, which, HUD alleges, is the exact relief that WHEDA seeks. (*See* Docket #30 at 8-13).

WHEDA advances various arguments in opposition to HUD's motion to dismiss this claim, none of which are convincing, and none of which require the Court to elaborate further. At bottom, and as HUD points out, WHEDA fails to cite any cases that have allowed similar APA claims to proceed (and the Court could not find any). Even more tellingly, WHEDA also fails to acknowledge the myriad Section 8 cases dismissing similar APA claims—filed in conjunction with breach of contract claims—for the exact reasons articulated by HUD. *See, e.g., Greenleaf III*, 2013 WL 4782017, at *4-5 ("The breach of contract action provides an 'adequate remedy' for [the state housing agency] that bars continuance of a separate claim against HUD under the APA."); *Cathedral Square Partners Ltd. P'ship v. South Dakota*, 679 F. Supp. 2d 1034, 1040-44 (D.S.D. 2009) (hereinafter *Cathedral Square I*); *Mack Bros. v. Maine State Hous. Auth.*, No. 10-CV-87, 2011 WL 2633084, at *8-9, 14 (D. Me. Jun. 24, 2011). While WHEDA has chosen to ignore these cases, the Court has not, and finds the reasoning in those cases persuasive.

Furthermore, Count II was alleged only conditionally by WHEDA, and was predicated upon the Court finding that jurisdiction was lacking, or WHEDA's claims did not arise under the parties' contracts. The Court has found to the contrary, given that Count I of the third-party complaint has not been dismissed, nor has the Court dismissed the entirety of the plaintiffs' amended complaint. Given that WHEDA's pleading, by its very terms, portends dismissal under this scenario, and in light of the persuasive authority granting dismissal of nearly identical APA claims under Section 8, the Court is obliged to grant HUD's motion to dismiss Count II.

### 2.4.2 Count III Should Not Be Dismissed In Its Entirety

HUD moves to dismiss Count III, WHEDA's request for declaratory relief on various grounds. First, HUD argues that WHEDA's claim, to the extent it seeks a declaratory relief for contracts other than those at issue here, fails to present a case or controversy. (Docket #30 at 17-18) ("[WHEDA] does not confine this broad [declaratory judgment] claim to its three HAP contracts with the [plaintiffs] and its three related Contribution Contracts with HUD. Rather, [it] asks the Court to render a sweeping advisory opinion [regarding non-parties' contracts]"). WHEDA, in its brief in opposition, then clarified that it is only seeking declaratory relief for the HAP contracts at issue in the instant action. (Docket #31 at 7) ("WHEDA does not seek resolution relating to HAP Contracts of owners who are not party to this action."). As such, the Court need discuss HUD's myriad arguments in support of its motion to dismiss this portion of Count III. Rather, the Court will grant HUD's motion to dismiss WHEDA's declaratory judgment claim (Count III), to the extent WHEDA's claim seeks declaratory relief for contracts other than those at issue in the instant matter..

Second, HUD argues that the Court "should exercise its discretion to deny declaratory relief in favor of a ruling on [the plaintiffs'] breach of contract claims," a ruling which HUD argues will "necessarily determine the parties' rights and duties under the HAP and Contribution Contracts that relate to the [plaintiffs'] properties." (Docket #30 at 22). HUD elaborates on this argument by asserting that Count III is "duplicative and unnecessary," and the breach of contract claims "provide for more appropriate and effective relief." (Docket #33 at 9) (citing *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 790 (N.D. Ill. 2010)); *see also Cathedral Square III*, 875 F. Supp. 2d at 966 ("The parties have not explained why the need for prospective relief would

not be satisfied by the res judicata effect of a judgment in the breach of contract claims.") (citing *Cathedral Square I*, 679 F. Supp. 2d at 1044). Thus, HUD requests dismissal of what remains of Count III.

WHEDA argues, conversely, that dismissing Count III at this stage of the proceedings is unwarranted because the scope of relief under the breach of contract claim is unclear and "[t]he interpretation and application of the rent adjustment and annual adjustment factor provisions of the HAP Contracts at issue…have the potential to impact [the ongoing relationship of the plaintiffs, WHEDA, and HUD] in the future." (Docket #31 at 6); *see id.* at 7 ("The Court should not dismiss Count [III] until such time as the issues raised in the [a]mended [c]omplaint have been resolved."). Finally, in support of its argument, WHEDA cites to *Greenleaf III*, 2013 WL 4782017, at *6, where the court declined to dismiss identical claims against HUD, reasoning that: "the breach of contract action alone will not settle attendant issues related to all future rent increase calculations, and will leave open the possibility of future litigation on the same contracts absent declaratory relief." *See id.* (holding, upon that reasoning, that the "uncertainty of the overlap of the breach claim and the [Declaratory Judgment] claim [at such an early stage in the case]," urged the Court to exercise its discretion and permit the claim to proceed).

The Court will deny HUD's motion to dismiss the remaining portion of WHEDA's declaratory judgment claim. As stated above concerning the plaintiffs' declaratory judgment claim, the Court has broad discretion to entertain requests for declaratory relief and will permit Count III to proceed. Of course, it may turn out, at a later stage in the litigation, that the breach of contract claim will adequately resolve what WHEDA seeks in it declaratory judgment claim; and, adjudication of the breach of contract claim may

ultimately, as HUD argues, "have a preclusive collateral estoppel effect that would govern [any] future disputes [between the parties]." (Docket #33 at 9). Nevertheless, as the Seventh Circuit opined recently, "[a] judgeship does not come equipped with a crystal ball," *United States v. Kappes*, 782 F.3d 828, 838 (7th Cir. 2015), and thus the Court declines to find that these claims are duplicative at this early stage in the litigation, and without the benefit of discovery. In that regard, then, the Court agrees with the reasoning of Judge Kendall in *Greenleaf III* that dismissal of such a claim, early in the case and without the benefit of discovery, would effectively "jump the gun," as it were. *See Greenleaf III*, 2013 WL 4782017, at *6 (noting that the court, at such an early juncture in the case, "lack[ed] sufficient information about the differences between a declaratory judgment of the rights of [the state agency] and HUD…and the breach of contract claim"). The Court is thus obliged, for those reasons, to deny HUD's motion to dismiss the remainder of Count III.

3.      CONCLUSION

For all of the reasons noted above, the Court will grant in part and deny in part WHEDA's motion to dismiss the plaintiffs' amended complaint, and grant in part and deny in part HUD's motion to dismiss WHEDA's third-party complaint. In summary, and in the interest of clarity: (1) Counts I, II, and IV of the plaintiffs' amended complaint may proceed, excepting the portions of Counts I and II that are barred by the applicable statute of limitations; and, (2) Counts I and III of WHEDA's third-party complaint may proceed, excepting the portion of Count III that requests declaratory relief for HAP contracts other than those at issue in the instant matter.

Accordingly,

IT IS ORDERED that WHEDA's motion to dismiss the plaintiffs' amended complaint (Docket #7) be and the same is hereby GRANTED in part and DENIED in part; and

IT IS FURTHER ORDERED that HUD's motion to dismiss WHEDA's third-party complaint (Docket #29) be and the same is hereby GRANTED in part and DENIED in part.

Dated at Milwaukee, Wisconsin, this 14th day of May, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge